UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| DEMETRIUS HEMPHILL, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 22-1452 |
| | ) | |
| ROBERT SNYDER, | ) | |
| Defendant. | ) | |

## ORDER

**COLLEEN R. LAWLESS, United States District Judge:**

Before the Court is a Motion for Leave to File Supplemental Motion for Summary Judgment (Doc. 37) filed by Defendant Robert E. Snyder. Plaintiff Demetrius Hemphill, a prisoner at Lawrence Correctional Center, has filed duplicative Motions for Leave to File an Amended Complaint (Docs. 38, 39). Neither party has filed opposing responses.

## I.　Background

In December 2022, Plaintiff filed a Complaint (Doc. 1) alleging constitutional violations at Pontiac Correctional Center against Defendants Corrections Lieutenants Dooling and Evans, Corrections Officer Snyder, and Nurse Mary.

On May 29, 2020, Defendant Evans assigned Plaintiff to a cell in the highest gallery of Pontiac's North cell house. Plaintiff complained to Evans that he had been issued a low gallery permit because of his diabetes, which required him to take two insulin shots daily. Plaintiff also told Evans his condition causes pain and swelling when climbing stairs. Defendant Evans refused to assign Plaintiff to a lower gallery.

On June 1, 2020, Defendant Snyder handcuffed Plaintiff before escorting him out of his cell. When Plaintiff inquired why he was handcuffed, which was not standard procedure, Snyder responded that Defendant Evans had ordered Plaintiff restrained because he had complained too much. As Plaintiff returned from receiving insulin, Snyder deliberately tripped Plaintiff as he approached a stairwell. As a result, Plaintiff hit the stairs, causing injuries to his chest, shoulder, and knees. Defendant Mary arrived, but after Snyder informed Mary that Plaintiff was fine, Mary left without taking Plaintiff to the healthcare unit or scheduling a sick call. Plaintiff was subsequently diagnosed with knee abrasions and a sprained shoulder. Subsequent diagnostic testing revealed a bruised area on Plaintiff's chest.

About a week later, Plaintiff asked for a transfer to protective custody because he began having problems with other inmates. As a result, Plaintiff was transferred to a cell in the highest gallery in Pontiac's West cell house. Plaintiff complained about his high gallery placement. As a result, Defendant Dooling moved Plaintiff to a cell in gallery two, which Plaintiff noted was in the disciplinary segregation unit.

The Court determined that Plaintiff had alleged enough facts to proceed with an Eighth Amendment excessive force claim against Defendant Snyder, a First Amendment retaliation claim against Defendants Evans and Snyder, and an Eighth Amendment deliberate indifference to serious medical need claims against Defendants Evans, Mary, and Snyder. The Court dismissed Defendant Dooling for failure to state a claim. (Mer. Rev. Doc. 10 at 4-6.)

Thereafter, the Court sent Notices of Lawsuit and Request for Waiver of Summons to Defendants. (Doc. 12.) The Court's waiver did not include a first name for Snyder as Plaintiff's pleading did not provide one. In May 2023, Defendants Lance Evans and Robert E. Snyder returned their individual signed waivers of service. (Doc. 13 at 1.) As to Defendant Mary, the Court informed Plaintiff that after Pontiac stated it did not employ a nurse with that name, and Plaintiff's later attempts to provide descriptive characteristics to identify Mary proved futile, the Court directed the Clerk of the Court ("Clerk") to substitute Jane Doe for Nurse Mary. The Court informed Plaintiff that if he could not identify Doe before the deadline established by the Court Scheduling Order (Doc. 18), Doe would be dismissed as a party. *See* June 19, 2023, Order. The Court Scheduling Order (Doc. 18) set discovery and dispositive motion deadlines and gave Plaintiff until September 18, 2023, to substitute the real name of Defendant Doe.

In October 2023, the Court granted the Motion to Withdraw the Affirmative Defense of Failure to Exhaust Administrative Remedies (Doc. 19) filed by Defendants Evans and Snyder. On April 19, 2024, Evans and Snyder filed a Motion for Summary Judgment (Doc. 20), and Plaintiff filed his response (Doc. 24).

In March 2025, the Court granted in part and denied in part Defendants' dispositive motion. (Doc. 28) After dismissing Defendant Doe for Plaintiff's failure to file a Motion to Substitute as directed, the Court granted summary judgment to Defendants Evans and Snyder on Plaintiff's First Amendment retaliation and Eighth Amendment deliberate indifference claims. However, the Court denied Snyder summary judgment on Plaintiff's Eighth Amendment excessive force claim. (Doc. 28 at 11-12:2.)

After Snyder and Plaintiff expressed an interest in settlement discussions (Docs. 29, 32), the Court referred Plaintiff's suit to a magistrate judge. During unsuccessful settlement discussions, the question arose as to whether Snyder was the proper party to these proceedings.

## II.    Motions for Leave to File Supplemental Motion for Summary Judgment

Although Plaintiff did not oppose Defendant Robert E. Snyder's Motion for Leave to File Supplemental Motion for Summary Judgment, Plaintiff concedes in his Motion for Leave to File an Amended Complaint (Doc. 38 at 1-2) that Robert E. Snyder was not the individual who Plaintiff alleges violated his constitutional rights. The Court accepts Plaintiff's concession and dismisses Robert E. Snyder as a party in this case. Thus, Defendant Snyder's Motion for Leave to File Supplemental Motion for Summary Judgment (Doc. 37) is denied.

## III.    Motions for Leave to File Amended Complaints

Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 38) is granted. The Court strikes Plaintiff's subsequent Motion for Leave to File an Amended Complaint (Doc. 39) as duplicative.

### A. Screening Standard

The Court must "screen" Plaintiff's complaint and dismiss any legally insufficient claim or the entire action if warranted. 28 U.S.C. § 1915A. A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id*. Upon reviewing the complaint, the court accepts the factual allegations as accurate, construing

them liberally in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

### B. Factual Allegations

Plaintiff identifies the following Pontiac officials: Corrections Lieutenants Dooling and Evans, Correctional Sergeants Blackard and Boland, Corrections Officer John Snyder, and Nurse Mary.

On May 29, 2020, Defendant Evans assigned Plaintiff to a cell in the highest gallery of Pontiac's North cell house. Plaintiff complained to Evans that he had been issued a low gallery permit because of his diabetes, which required him to take two insulin shots daily. Plaintiff also told Evans his condition causes pain and swelling when climbing stairs. Defendant Evans refused to assign Plaintiff to a lower gallery.

On June 1, 2020, Defendant Snyder handcuffed Plaintiff before escorting him out of his cell. When Plaintiff asked why Snyder handcuffed him for general movement, which was not standard procedure, Snyder told Plaintiff that Defendant Evans ordered Plaintiff restrained because he complained too much. As Plaintiff returned from receiving insulin, Snyder deliberately tripped Plaintiff as he approached a stairwell. As a result, Plaintiff hit the stairs, causing injuries to his chest, shoulder, and knees. Defendants Blackard and Boland arrived shortly thereafter, but Blackard, Boland, and Evans denied Plaintiff's request to be sent to the Healthcare Unit. Defendant Mary also appeared, but after Snyder informed Mary that Plaintiff was fine, Mary left without taking Plaintiff to

the healthcare unit or scheduling a sick call. Plaintiff was subsequently diagnosed with knee abrasions and a sprained shoulder. Subsequent diagnostic testing revealed a bruised area on the chest.

About a week later, Plaintiff asked for a transfer to protective custody because he began having problems with other inmates. As a result, Plaintiff was transferred to a cell in the highest gallery in Pontiac's West cell house. Plaintiff again complained about his high gallery placement. As a result, Defendant Dooling moved Plaintiff to a cell in gallery two, which Plaintiff noted was in the disciplinary segregation unit.

**C. Analysis**

As the preceding factual summary shows, Plaintiff reiterates the First Amendment retaliation and Eighth Amendment deliberate indifference claims he raised in his initial complaint against Defendant Evans, which this Court considered and dismissed at summary judgment. Thus, Plaintiff fails to state plausible claims against Evans.

The Court concludes that Plaintiff states an Eighth Amendment excessive force claim against Defendant John Snyder for the alleged force used while escorting Plaintiff to his cell on June 1, 2020. *See Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 667 (7th Cir. 2012) ("The use of force qualifies as excessive for the purpose of Eighth Amendment . . . when it entails the 'unnecessary and wanton infliction of pain.'") (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

To make out a prima facie case of First Amendment retaliation, a plaintiff must establish that (1) he engaged in activity protected by the First Amendment, (2) he suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the

First Amendment activity was "at least a motivating factor" in the defendants' decision to take the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

Plaintiff states a First Amendment retaliation claim against Defendant John Snyder for handcuffing Plaintiff during movement because of Plaintiff's complaints. *See Daugherty v. Harrington*, 906 F.3d 606, 610 (7th Cir. 2018) ("[T]he filing of a prison grievance is a constitutionally protected activity supporting a First Amendment retaliation claim, as are oral complaints about prison conditions." (internal citation omitted)); *see also Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken.").

"Prison officials violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates 'deliberate indifference to serious medical needs of prisoners.'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). To succeed on a claim of deliberate indifference to a serious medical need, a plaintiff must satisfy a test that contains both an objective and subjective component. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). Under the objective component, a plaintiff must demonstrate that his medical condition is sufficiently severe. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Under the subjective component, the prison official must have acted with a "sufficiently culpable state of mind." *Id.* Thus, a plaintiff can establish deliberate indifference by showing that a defendant "knew of a substantial risk of harm to the inmate and disregarded the risk." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

Plaintiff's narrative regarding Defendants Blackard, Boland, and Snyder denying Plaintiff's request to be sent to the Healthcare Unit; Snyder's statements minimizing Plaintiff's injuries on June 1, 2020; and Defendant Mary's lack of medical treatment or referral, given Plaintiff's injuries, states an Eighth Amendment claim for deliberate indifference to serious medical needs.

However, for the reasons already noted regarding Pontiac's confirmation that it did not employ a Nurse named Mary at the time of Plaintiff's alleged violations, the Court directs the Clerk to substitute Defendant Jane Doe for Defendant Mary. The Court informs Plaintiff that service of process cannot occur on a Doe Defendant. Thus, after the identified Defendants have been served and filed their Answer, the Court will enter a Scheduling Order that guides the Plaintiff's responsibilities in determining the Doe Defendants during the discovery period, among other issues, and filing a motion to substitute the Doe Defendants' real identities before the imposed deadline expires.

Plaintiff does not state a claim against Defendant Dooling for placing him in a lower gallery cell within the disciplinary segregation unit. Plaintiff claims that Dooling's actions violated a state statute. However, Title "42 U.S.C. §1983 does not authorize federal courts to order state officials to pay damages for violations of state law; remedies in §1983 suits are for violations of federal law only." *Brown v. Randle*, 847 F.3d 861, 865 (7th Cir. 2017).

In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), "the Supreme Court determined that the Fourteenth Amendment provides to inmates a liberty interest in avoiding placement in more restrictive conditions, such as segregation, when those conditions pose an

atypical and significant hardship when compared to the ordinary incidents of prison life." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008). Plaintiff neither makes such a showing nor provides any facts that Dooling's decision directly resulted in an injury to his person. *See Roe v. Elyea*, 631 F.3d 843, 864 n.19 (7th Cir. 2011) ("[U]nder tort principles applicable in § 1983 actions, a plaintiff must show that 'he has suffered an "actual" present injury and that there is a causal connection between that injury and the deprivation of a constitutionally protected right caused by a defendant.'") (quoting *Henderson v. Sheahan*, 196 F.3d 839, 848 (7th Cir. 1999)).

The court informs Plaintiff that, given the unusual circumstances regarding the misidentification of Defendant Robert E. Snyder, Defendants may raise affirmative defenses that could result in the dismissal of one or more Defendants despite the Court's Merit Review Order on Plaintiff's amended pleading. *See Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) ("Lawsuits brought under § 1983 are governed by the statute of limitations for personal injury in the state where the injury occurred, which in Illinois is two years."); *see also Gomez v. Randle*, 680 F.3d 859, 864 n.1 (7th Cir. 2012) ("A plaintiff's lack of knowledge about a defendant's identity is not a 'mistake' within the meaning of Federal Rule of Civil Procedure 15(c) such that the plaintiff could amend his complaint outside the statute of limitations period upon learning the defendant's identity."); *see also Ray v. Clements*, 700 F.3d 993, 1006 (7th Cir. 2012) ("Generally, the party raising an affirmative defense bears the burden of proof.").

**IT IS THEREFORE ORDERED:**

1)    **The Clerk is DIRECTED to terminate Robert E. Snyder as a Defendant and**

STRIKE Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 39).

2) Plaintiff's Motion for Leave to File Supplemental Motion for Summary Judgment (Doc. 37) is DENIED.

3) The Court GRANTS Plaintiff's Motion for Leave to File an Amended Complaint (Doc. 38).

4) According to the Court's screening of Plaintiff's Complaint (Doc. 38) under 28 U.S.C. § 1915A, Plaintiff has alleged enough facts to proceed with an Eighth Amendment excessive force claim against Defendant John Snyder, a First Amendment retaliation claim against Defendants John Snyder, and an Eighth Amendment deliberate indifference to serious medical need claims against Defendants Blackard, Boland, John Snyder,  and Jane Doe. Plaintiff's claim against Defendants proceeds in their individual capacity only. Additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or under Federal Rule of Civil Procedure 15.

5) This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will be denied as premature. Plaintiff need not submit evidence to the Court unless otherwise directed by the Court.

6) The Court will attempt service on Defendants by mailing each Defendant a waiver of service. Defendants have sixty days from service to file an Answer. If Defendants have not filed Answers or appeared through counsel within ninety days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.

7) Concerning a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall submit to the Clerk said Defendant's current work address or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

8) Defendants shall file an Answer within sixty days of the date the Clerk sends the waiver. A motion to dismiss is not an answer. The Answer should include all defenses appropriate under the Federal Rules. The Answer and subsequent pleadings shall be to the issues and claims stated in this Order. An answer sets

forth the Defendants' positions. The Court does not rule on the merits of those positions unless and until Defendants file a motion. Therefore, no response to the Answer is necessary or will be considered.

9) This District uses electronic filing, which means that after Defendants' counsel has filed an appearance, Defendants' counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Therefore, Plaintiff does not need to mail copies of motions and other documents that Plaintiff has filed with the Clerk to Defendants' counsel. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Instead, Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance, and the Court has entered a scheduling order, which will provide more detailed information about the discovery process.

10) Defendants' counsel is granted leave to depose Plaintiff at his place of confinement. Defendants' counsel shall arrange the time for the deposition.

11) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to inform the Court of a change in mailing address or phone number will result in the dismissal of this lawsuit with prejudice.

12) If a Defendant fails to sign and return a waiver of service to the Clerk within thirty days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals Service on that Defendant and will require that Defendant to pay the total costs of formal service under Federal Rule of Civil Procedure 4(d)(2).

13) The Court directs the Clerk to enter the standard qualified protective order under the Health Insurance Portability and Accountability Act.

14) The Court directs the Clerk to attempt service on Defendants under the standard procedures.

ENTERED November 14, 2025.


s/ *Colleen R. Lawless*

_____
COLLEEN R. LAWLESS
UNITED STATES DISTRICT JUDGE

1:22-cv-01452-CRL   # 40   Filed: 11/14/25   Page 12 of 12